■ John A. Janendo, Jr., Respondent, v Town of New Paltz Police Department et al., Appellants. [621 NYS2d 175] —Mikoll, J. Appeal from an order of the Supreme Court (Cobb, J.), entered January 4, 1994 in Ulster County, which denied a

motion by defendants for summary judgment dismissing the complaint.

Following a preliminary hearing, a Town Justice found probable cause for the arrest of plaintiff for driving while intoxicated; the charge was later dismissed before trial in the interest of justice. An Administrative Law Judge (hereinafter ALJ) found probable cause after a hearing to revoke plaintiff's driver's license pursuant to Vehicle and Traffic Law § 1194 for his refusal to submit to a chemical test. The primary issue presented on this appeal is whether these findings collaterally estop plaintiff from relitigating the issue of probable cause in the instant action for malicious prosecution. In our view, the doctrine of collateral estoppel applies and plaintiff is precluded from relitigating the issue. Accordingly, Supreme Court erred in denying the motion of defendants, the Town of New Paltz Police Department and Police Officer Raymond E. Nicholas, Jr., for summary judgment dismissing the complaint. The order of Supreme Court should therefore be reversed and the complaint dismissed.

According to defendants, Nicholas was on duty in his patrol car with another officer when, at about 12:50 A.M. on July 24, 1988, he observed plaintiff drive through a steady red traffic light controlling the intersection of the Thruway entrance and State Route 299 in the Town of New Paltz, Ulster County. Nicholas then followed plaintiff's automobile approximately 1/4 of a mile into the parking lot of a local diner where plaintiff parked his car. Nicholas approached plaintiff's parked car and directed plaintiff to get out. According to Nicholas, after asking plaintiff for his license and registration, he smelled a strong odor of alcohol on plaintiff's breath and asked plaintiff if he had been drinking. Plaintiff replied, "I had about 10 beers or maybe I stopped counting." Nicholas also stated that plaintiff exhibited slurred speech, glassy eyes, a "wobbly" stance and had a hard time standing up. Nicholas conducted roadside sobriety tests and noted that plaintiff stopped reciting the alphabet at the letter F, began mumbling and could not continue. Nicholas reported that plaintiff also failed the index finger-to-nose touch test. Nicholas stated that he then concluded that plaintiff was "highly intoxicated" and arrested him for, *inter alia,* driving while intoxicated. Nicholas denied that plaintiff told him of any injuries before his arrest except that he had a back injury. Nicholas further stated that at the Town Police Station, plaintiff refused on three separate occasions requests to take a breathylizer test despite warnings

that refusal would result in the revocation of his driver's license.

Following a hearing held in August 1988 before an ALJ, plaintiff's license was revoked. Thereafter, in February 1989 a probable cause hearing was held before a Town Justice at the conclusion of which it was found that there was "probable cause to arrest" plaintiff "for driving while intoxicated" and that statements made at the diner parking lot by plaintiff were admissible. These findings were confirmed in a letter signed by the Town Justice dated June 10, 1993.

Plaintiff recalled the facts differently. Plaintiff contended that he had consumed no more than two grapefruit juice-and-gin drinks during the 90 minutes he was at a tavern located about a mile from the diner. Plaintiff stated that he saw the signal light turn yellow as he approached the intersection of Route 299 with the Thruway ramp and slowed down. Plaintiff said the road was wet from rain with the result that his brakes locked, and that rather than go into a skid he proceeded through the intersection. Plaintiff further stated that the light turned red while he was under it.

Plaintiff explained that he was unable to perform the sobriety tests administered by Nicholas due to his physical disabilities resulting from an accident which he claims to have told Nicholas about, but that Nicholas insisted on administering the tests anyway. Plaintiff said that his speech is always somewhat slurred due to bridgework in his mouth. Plaintiff stated that he was unable to recite the alphabet because Nicholas interrupted him at the letter F with a derisive inquiry regarding how much schooling he had. Plaintiff claimed that Nicholas' comment caused him to stop reciting the alphabet and to request permission to call his attorney. Plaintiff explained that surgical pins implanted in his recently repaired fractured arm prevented him from performing the finger-to-nose test. Plaintiff stated that his mobility was also limited due to a separated shoulder and degenerative arthritis in his lower back. Plaintiff offered the explanation that his unsteady stance might be due to broken bones in his ear which cause him to experience dizziness.

Plaintiff denied being requested to take a "breathylizer test" at the police station. He said he was asked to take a "chemical test" and responded that he does not "do drugs". However, contrary to plaintiff's assertions that he had only two grapefruit juice-and-gin drinks at the tavern, a waitress testifying on plaintiff's behalf stated that plaintiff drank three grape-

fruit juice-and-gin drinks that night and that she had served him a fourth drink that she assumed was for him. A patron at the same tavern testified that plaintiff's drinks were in tumbler-type round glasses but that she did not know the glass size.

The charges pending against plaintiff as a result of his arrest on July 24, 1988 were scheduled for a jury trial before the Town Justice on December 4, 1990. Prior to commencement of the trial, the Town Justice dismissed the charge of driving while intoxicated in the interest of justice and accepted plaintiff's plea of guilty to violations of Vehicle and Traffic Law § 1229-c (failure to wear a seatbelt) and § 1111 (d) (1) (failure to obey a traffic light). In the order dated December 17, 1990, the Town Justice directed that the driving while intoxicated charge be "dismissed in the furtherance of justice, based among other considerations, upon the production by the defendant of certified medical records setting forth the defendant's specific and significant physical limitations which prevented the defendant from performing the field sobriety tests requested of him by the arresting police agency, and this inaccurately formed the basis of probable cause of defendant's arrest on said charge". The order indicated that the fines were to be paid by plaintiff upon his plea of guilty to running the red light and the seat belt violation, and recited that they had been paid.

The instant action was commenced on December 27, 1991. This appeal is taken from the order of Supreme Court denying defendants' motion for summary judgment as to the malicious prosecution cause of action.*

Defendants argue that the determination of the ALJ and/or the decision of the Town Justice finding that there was probable cause for plaintiff's arrest preclude plaintiff from relitigating the issue of probable cause in the instant action based on the doctrine of collateral estoppel since the absence of probable cause defeats an action for malicious prosecution. We agree. In order to succeed in an action for malicious prosecution, a plaintiff must prove (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) lack of probable cause, and (4) the presence of actual malice *(Colon v City of New York,* 60 NY2d 78, 82; *see, Martin v City of Albany,* 42 NY2d 13, 16). And the

---

* In a previous order, Supreme Court dismissed all of the other causes of action asserted against defendants.

presence of probable cause to make the arrest of a plaintiff in an action for malicious prosecution bars its prosecution (see, Broughton v State of New York, 37 NY2d 451; Feinberg v Saks & Co., 83 AD2d 952, mod 56 NY2d 206).

The determination of an ALJ with respect to probable cause is a bar to relitigation of the issue where, as here, plaintiff was represented by counsel, the issue was material to the object of the proceeding, the issue is identical in both matters and plaintiff had a full and fair opportunity to litigate the issue in the first case (see, Ryan v New York Tel. Co., 62 NY2d 494, 499-503; see also, Zanghi v Incorporated Vil. of Old Brookville, 752 F2d 42, 45-46; Hugar v Nigro, 207 AD2d 954).

Supreme Court's bare conclusion that the issue of probable cause in the ALJ's determination was not identical to the issue in the malicious prosecution action is incorrect (see, Hugar v Nigro, supra). Vehicle and Traffic Law § 1194 (2) (c) provides that there must be a finding of probable cause for the arrest before a license may be suspended and subsequently revoked for refusal to submit to a chemical test. The transcript of the hearing before the ALJ indicates that the issue of probable cause was discussed at the hearing; Nicholas, the arresting officer, was cross-examined on the elements of the issue and at the conclusion of the hearing plaintiff's motion to dismiss "for failure to establish probable cause" was denied in its entirety. Accordingly, the doctrine of collateral estoppel is applicable to the determination of the ALJ as well as to the decision of the Town Justice, who found probable cause to arrest plaintiff at the probable cause hearing held in February 1989. The subsequent dismissal of the driving while intoxicated charge by the Town Justice in December 1990 did not vacate or reverse the earlier finding of probable cause in the hearing before the ALJ or in the hearing before the criminal action as the dismissal was not on the merits and did not determine the guilt or innocence of plaintiff (see, Ryan v New York Tel. Co., supra, at 504-505; Hugar v Nigro, supra). Significantly, the Town Justice did not find that the arresting officers lacked probable cause to make the arrest in the order of dismissal, but recited specifically that the order was also based "upon other considerations". It is also significant that the medical records on which the Town Justice based the decision have not been made a part of the record before this Court and we have no way to evaluate to what extent, and in what way, if any, plaintiff's physical disabilities could have and/or may have been affected by his consumption of alcohol that night.

Plaintiff argues that even though there was probable cause for the arrest, evidence could later surface which would eliminate that probable cause (see, *Oakley v City of Rochester,* 71 AD2d 15, 18, *affd* 51 NY2d 908). That argument, however, loses its force here where plaintiff was represented at each hearing to determine probable cause and knew of his injuries at the time of each hearing. Plaintiff did not pursue his right for administrative and/or judicial review of the adverse administrative determination and accepted the dismissal in the interest of justice disposition as part of a settlement of all the charges pending in the criminal action. The disposition of the Town Justice did not vacate, reverse or nullify the earlier finding of probable cause for his arrest (see, *Ryan v New York Tel. Co., supra; see also, Zanghi v Incorporated Vil. of Old Brookville, supra).* Significantly, the hearing before the Town Justice produced conflicting evidence concerning the amount of alcohol plaintiff had consumed that night. The subsequent dismissal in the interest of justice was based not on a determination of guilt or innocence and did not evaluate the conflicting evidence.

Cardona, P. J., Mercure, Casey and Yesawich Jr., JJ., concur. Ordered that the order is reversed, on the law, without costs, motion granted, summary judgment awarded to defendants and complaint dismissed.